**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AMERICAN EAGLE OUTFITTERS, INC., )
and RETAIL ROYALTY COMPANY, ) No. 2:20-cv-1488-RJC
)
Plaintiffs, )
) Judge Robert J. Colville
vs. )
)
LYLE & SCOTT LIMITED, )
)
Defendant. )

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are a Motion to Dismiss (ECF No. 17) filed by Defendant Lyle & Scott

Limited ("L & S") and a Motion for Leave to File an Amended Complaint ("Motion to Amend")

(ECF No. 31) filed by Plaintiffs American Eagle Outfitters, Inc. ("AE") and Retail Royalty

Company (collectively, "AEO"). L & S seeks dismissal of this action pursuant to Federal Rules

of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3), and alternatively requests that the Court stay

the present action pending rulings by the High Court of Justice in London, England ("High Court")

as to the final disposition of the claims previously pending before the High Court in the United

Kingdom.[1]  By way of the Motion to Amend, AEO seeks to file an amended complaint that: (1)

adds a breach of contract claim; (2) corrects a factual allegation in the original Complaint; and (3)

sets forth an additional factual allegation to purportedly amplify AEO's existing declaratory

judgment claims.  The Court has chosen to address the Motions at issue at the same time due to L

---

[1] While L & S also originally sought a stay in this action pending the High Court's decision on AEO's jurisdictional challenge to those proceedings, L & S has since advised this Court that the High Court has "denied AEO's . . . jurisdictional challenge to the UK proceedings and is proceeding towards the final disposition of the claims previously pending in the United Kingdom."  Br. in Opp'n to Mot. to Amend 2, ECF No. 32.

& S's argument that amendment is futile for the same reasons set forth in its Motion to Dismiss. The Motions at issue have been fully briefed, and are ripe for disposition.

## I.     Factual Background & Procedural History

AEO brings this action seeking declaratory judgment that a "Co-Existence Agreement" between AEO and L & S does not prohibit AEO from selling products bearing its "AEO Eagle Design" through third-party websites, including, but not limited to, ASOS.com and ZALANDO.com, and also seeks a declaratory judgment holding that such conduct does not constitute passing off, unfair competition, or trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq or applicable state law.  Compl. ¶¶ 1; 35, ECF No. 1.  In the Complaint (ECF No. 1), AEO sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

AE is a corporation of the State of Delaware with a principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203.  Compl. ¶ 2, ECF No. 1.  AE has utilized the following AEO Eagle Design ("AEO Eagle Design") since August of 2003:



*Id.* at ¶ 10.  Plaintiff Retail Royalty Company owns numerous U.S. Trademark Registrations for the AEO Eagle Design.  *Id.* at ¶ 11.  L & S is a clothing retailer based in the United Kingdom who also owns an eagle design trademark, as well as registrations and applications, in several territories, including the United States.  *Id.* at ¶¶ 12-13.

In 2005, a trademark dispute arose between AE and L & S with respect to AE's use of the AEO Eagle Design.  Compl. ¶¶ 12-13, ECF No. 1.  On January 9, 2006, the parties entered into a

perpetual, worldwide co-existence agreement ("Co-Existence Agreement") to resolve their trademark dispute. *Id.* at ¶ 13.  The Co-Existence Agreement provided, in its entirety, as follows:

> AE to pay $1,000,000 (US) to Lyle & Scott.
> Parties agree as follows:
> - AE to use its current eagle on American Eagle branded merchandise, products must also bear American Eagle or American Eagle Outfitters on the label;
> - AE to sell products in AE stores, stores within stores or AE website;
> - LS to use its eagle designs on Lyle & Scott branded merchandise, products must also bear Lyle & Scott on the label;
> - Perpetual and worldwide pertaining to goods of LS registrations
> - AE shall have the right of first refusal to purchase LS eagle(s) or business
> - Each party shall consent to the registration of the other's eagle[] and AE shall withdraw its opposition against LS application in the US
> - Each side [bears] their own government taxes
> - AE to pay the reasonable and customary atty fees of LS
> - AE will not launch or offer a specific range targeted at the golf market
> - AE will discuss with LS [sourcing of] garments.

Compl. ¶ 13, ECF No. 1; *see also* Reply in Supp. of Mot. to Amend. 3 n.3, ECF No. 34.  In May of 2006, AEO sought declaratory judgment in the United States District Court for the Western District of Pennsylvania confirming the enforceability of the Co-Existence Agreement ("2006 WDPA Action").  Compl. ¶ 14, ECF No. 1.  Both the United States District Court for the Western District of Pennsylvania and the United States Court of Appeals for the Third Circuit have held that the Co-Existence Agreement is a valid and enforceable contract. *Id.* at ¶¶ 14-15.

AE sells its AEO Eagle Design-branded products through its various stores and its website (AE.com), and also sells such products through third-party websites across the globe, including TMALL.com since 2014, HFASHIONMALL.com since 2015, TERMINALX.com since 2017, and, more recently, through other websites, including ASOS.com and ZALANDO.com since April 2020 and September 2019, respectively.  Proposed Am. Compl. ¶ 20, ECF No. 31-1; Compl. ¶ 17, ECF No. 1.  L & S products bearing the L & S eagle design have also been sold through some of the same third-party websites.  Compl. ¶ 18, ECF No. 1.    L & S wrote to AE in mid-2020 to

object to AE's sale of its AEO Eagle Design-branded products through third-party websites, and ultimately filed a claim on August 4, 2020 against AE before the High Court ("UK Action") alleging that AE had breached the Co-Existence Agreement.  *Id.* at ¶ 19.  In the UK Action, L & S asserts that AE breached the Co-Existence Agreement by selling AEO Eagle Design-branded products through third-party websites, including ASOS.com and ZALANDO.com, and that, in doing so, AE also passed off its goods as those of L & S in violation of UK law.  *Id.*

AEO avers that the Co-Existence Agreement does not preclude AE from selling products that bear the AEO Eagle Design through third-party websites, so long as such products include "American Eagle" or "American Eagle Outfitters" on the product label.  Compl. ¶ 20, ECF No. 1. All AEO Eagle Design-branded products bear "American Eagle" or "American Eagle Outfitters" on the product label.  *Id.* at ¶ 16.  AEO further asserts:

> When internet users search the ASOS.com and ZALANDO.com websites for "American Eagle" products, the websites provide search results listing only American Eagle products and such products are conspicuously identified by the "American Eagle" name and trademark.  The search results for "American Eagle" products do not include L & S products or any other third-party products. . . .
>
> Similarly, when internet users search the ASOS.com and ZALANDO.com websites for "Lyle & Scott" products, the ASOS.com and ZALANDO.com websites provide search results listing only Lyle & Scott products and such products are conspicuously identified by the name and mark "Lyle & Scott."  The search results for "Lyle & Scott" products do not include American Eagle products.

*Id.* at ¶ 21-22.

As noted above, the proposed amended complaint seeks to add a claim for breach of contract asserting that L & S, following the filing of the instant action, has breached the Co-Existence Agreement by filing trademark opposition proceedings against AEO's European Union Trademark Application and UK Trademark Application in order to prevent the registration of what AEO refers to as the "AEO Eagle 2 Design."  *See* Mot. to Amend ¶¶ 5-9, ECF No. 31.  The

proposed amended complaint also contains the following additional averment in support of AEO's declaratory judgment claims: "Further, the Co-Existence Agreement permits AEO to sell products bearing the AEO Eagle Design with 'American Eagle' or 'American Eagle Outfitters' on the product label in 'stores within stores' that are online, including ASOS.com and ZALANDO.com, as well as in 'brick and mortar' form." *See* Mot. to Amend ¶ 11, ECF No. 31; Proposed Am. Compl. ¶ 24, ECF No. 31-1. The proposed amended complaint further contains a seemingly minor amendment/correction with respect to the third-party websites through which AEO sells its products to a worldwide market, and the same has been incorporated above in the Court's summary of the Complaint's allegations. *See* Mot. to Amend ¶ 11, ECF No. 31; Proposed Am. Compl. ¶ 20, ECF No. 31-1; Compl. ¶ 17, ECF No. 1.

AEO commenced this action by filing the Complaint on October 1, 2020. L & S filed its Motion to Dismiss, along with a Brief in Support (ECF No. 18) on December 3, 2020. AEO filed its Brief in Opposition (operative filing at ECF No. 24) on January 7, 2021. L & S filed its Reply (ECF No. 23) on January 14, 2021. After seeking and being granted leave of court, AEO filed a Surreply (ECF No. 27) on January 26, 2021, and L & S filed a Reply ("Reply to Surreply") (ECF No. 30) to AEO's Surreply on February 4, 2021.

AEO filed the Motion to Amend on March 9, 2021. L & S filed a Brief in Opposition (ECF No. 32) on March 18, 2021. AEO filed a Reply (operative filing at ECF No. 34) on March 25, 2021.

## II.    Legal Standards

### A.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir.

2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists.  *Brown v. Tucci*, C.A. No. 12-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  The United States Court of Appeals for the Third Circuit has explained:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000)) (internal quotation marks omitted).  Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction.  *Id*.  In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's ... very power to hear the case" is at issue.  *Id*.  With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence.  *Petruska*, 462 F.3d at 302 n.3; *see also Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortenson*, 549 F.2d at 891).

**B.  Fed. R. Civ. P. 12(b)(2)**

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), the court 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'"  *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992)).  Once a defendant has properly raised a jurisdictional defense, however, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990) (per curiam). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located.  Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990).  In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution.  *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir.1985).  This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may

be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490.  The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *North Penn Gas*, 897 F.2d at 690.  The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  The "paradigm" forums where a corporate defendant is at home are the corporate defendant's place of incorporation and its principal place of business. *BNSF Ry. Co.*, 137 S. Ct. at 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).  The Third Circuit has explained the three-part

analysis for specific jurisdiction.  "First, the defendant must have 'purposefully directed [its] activities' at the forum.  Second, the litigation must 'arise out of or relate to' at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'"  *O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).  To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.*  However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir.2004).  The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests" -- whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state.  *Id.* at 323.

### C.  Fed. R. Civ. P. 12(b)(3)

A motion seeking dismissal under Rule 12(b)(3) asserts a challenge as to whether the court where the lawsuit is brought is a proper venue for resolution of the pending civil action.  Fed. R. Civ. P. 12(b)(3).  In general, a civil action may be brought in the following venues:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  "For all venue purposes . . . a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in

determining where the action may be brought with respect to other defendants."  28 U.S.C. § 1391(c)(3).

Where a defendant relies on the doctrine of forum non conveniens in seeking dismissal, "[i]t is settled that the defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis."  *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988).  The defendant must first establish the existence of an adequate alternative forum, and this requirement is generally satisfied if the defendant is "amenable to process" in the alternative forum.  *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991).  An alternative forum may be inadequate, however, if it offers an unsatisfactory remedy, such as where "the subject matter of the suit is not cognizable in the alternative forum."  *Lacey*, 932 F.2d at 180.  If the defendant establishes the existence of an adequate alternative forum, the defendant must then establish that certain private and public interest factors weigh heavily in favor of dismissal.  *Id*.  A plaintiff's choice of forum is typically entitled to substantial deference, and "should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant."  *Lacey*, 862 F.2d at 43.

**D.  Fed. R. Civ. P. 15(a)**

With respect to amendment under Rule 15(a), the Supreme Court of the United States has explained:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted). "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (citing *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)). "Because a futility challenge attacks an amendment's legal sufficiency, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6)." *McLaughlin v. Seneca Res. Corp.*, No. CV 17-255, 2018 WL 623499, at *3 (W.D. Pa. Jan. 30, 2018) (citing *Jablonski*, 863 F.2d at 292).

### III.    Discussion

#### A.  Motion to Dismiss

L & S asserts that this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) under the principles of the first-filed rule, international comity, and improper venue due to the existence of a first-filed action pending before the High Court, in which L & S has asserted affirmative claims against AEO concerning breach of contract and passing off under the law of the United Kingdom. Mot. to Dismiss ¶ 1, ECF No. 17. L & S further asserts that this matter should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over L & S because L & S is "an entity incorporated, maintaining a principal place of business, and conducting the majority of its business in the United Kingdom that has insufficient contacts with this District

to support either general or specific jurisdic[ti]on." *Id.* at ¶ 2.  L & S also seeks dismissal pursuant to Rule 12(b)(1), and argues that the Court lacks subject matter jurisdiction over AEO's claims under the Declaratory Judgment Act, which purportedly "request this Court's extraterritorial application of the Lanham Act with respect to conduct occurring in foreign nations across the globe in a manner that is not presently ripe for review."  *Id.* at ¶ 3.  As noted above, L & S alternatively requests that the Court stay the present action pending final resolution of the claims pending before the High Court in the United Kingdom.  *Id.* at ¶ 4.

### 1.   Fed. R. Civ. P. 12(b)(1) (Subject Matter Jurisdiction)

The Court will first address L & S's assertion that this Court lacks subject matter jurisdiction in this matter, as such an assertion challenges a "court's 'very power to hear the case.'" *Petruska*, 462 F.3d at 302 (3d Cir. 2006) (quoting *Mortensen*, 549 F.2d at 891).  "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . .  any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)).  A declaratory judgment action must satisfy the case-or-controversy requirement, and the Supreme Court of the United States has explained that its decisions "have required the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)); *see also id.* ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941))); *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (explaining that, in determining whether there exists an actual controversy in a declaratory judgment action, courts look to "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment.").

With respect to L & S's argument that the UK Action is simply limited to AEO's sale of its products through third-party websites in the UK, and that any decision rendered in that case has no impact on, and is not concerned with, any other conduct of AEO across the globe, the Court notes that the High Court has recognized, and this Court agrees, that, due to the worldwide scope of the Co-Existence Agreement, a decision in the UK Action could result in global consequences for the parties, and that L & S has thus understated the breadth of the relief sought by way of the UK Action. *See* ECF No. 30-1 at ¶ 59 (the High Court explaining: "I consider L & S's characterization of the dispute is too narrow as regards the contract claims. The terms of the memorandum agreement were worldwide in scope (as found by the US courts in the earlier proceedings). The 2nd bullet is not limited to any particular territories. I agree with AE's submission that the declaration being sought by L & S in the proceedings could potentially have consequences for both parties throughout the world.").

In light of the above, the Court rejects any argument raised by L & S that there is, at this time, no current dispute or controversy respecting AEO's sale of its products across the globe through third-party websites. *See* Reply in Supp. of Mot. to Dismiss 13, ECF No. 23 ("AEO seeks to raise issues regarding sales 'across the globe' that Lyle & Scott has not yet determined are in dispute. Due to the lack of a present dispute on this point, the issues are not, therefore, immediately

presented for the Court's resolution of a real controversy.").  L & S effectively concedes this point in its Reply to AEO's Surreply, *see* Reply to Surreply 5-6, ECF No. 30, and the Court hereby affirmatively holds that the worldwide scope of the Co-Existence Agreement, as well as L & S's actions in threatening, and taking, legal action against AEO for AEO's sale of its products through third-party websites, establish that there is a present, actual controversy with respect to AEO's request for declaratory relief holding that the Co-Existence Agreement between AEO and L & S does not prohibit AEO from selling products bearing its AEO Eagle Design through third-party websites across the globe.  The Court may exercise subject matter jurisdiction over such a claim under the Declaratory Judgment Act.

The Court notes that the parties have, in rather limited fashion, also raised and argued the issue of whether this Court has subject matter jurisdiction over AEO's claim for declaratory judgment respecting whether AEO's sale of its products bearing the AEO Eagle Design through third-party websites, including but not limited to ASOS.com and ZALANDO.com, constitutes passing off, unfair competition, or trademark infringement under the Lanham Act and/or applicable state law.  Over the course of five briefs, this issue has been narrowed significantly, as AEO, at least seemingly, has constrained their Lanham Act and applicable state law declaratory judgment claim to AEO's sale of its products through third-party websites to customers in the United States.  *See* Surreply 3, ECF No. 27 ("Furthermore, the UK High Court cannot resolve the question properly before this Court of whether AEO's sale of AEO Eagle Mark-products into the US through third-party websites violates the Lanham Act or corresponding Pennsylvania law.  Complaint, ¶¶ 33-35.  That issue is not even before the UK High Court."); Reply to Surreply 3, ECF No. 30 ("Further, and at last, AEO concedes the limits of this Court's subject matter jurisdiction by noting the only claim that could be 'properly before this Court' is whether 'AEO's

sale of AEO Eagle Mark-products into the US through third-party websites violates the Lanham Act or corresponding Pennsylvania law.'" (citation to Surreply omitted)).

L & S fails to address, in any material manner, whether this Court has subject matter jurisdiction to hear such a claim, or whether the same presents an actual controversy. The Court clearly would have jurisdiction over such a claim under the Declaratory Judgment Act if the claim presents an actual controversy.[2] Given that the parties' dispute is currently worldwide in nature, and given that L & S has already asserted a passing off claim in the UK Action, this Court is inclined to find, at this juncture, that there is a justiciable controversy as to whether AEO's sale of its products through third-party websites to customers in the United States constitutes a violation of the Lanham Act or corresponding Pennsylvania law. As such, the Court has subject matter jurisdiction over such a claim.[3]

### 2. Fed. R. Civ. P. 12(b)(2) (Personal Jurisdiction)

Having determined that the Court has subject matter jurisdiction over AEO's claims under the Declaratory Judgment Act, the Court must look to whether it has personal jurisdiction over L & S. The Court agrees with L & S that AEO fails to set forth a sufficient basis for the Court's assertion of general personal jurisdiction over L & S. The Court disagrees, however, with L & S's assertion that the bases set forth by the Honorable Francis X. Caiazza in his April 12, 2007 Memorandum and Order in the 2006 WDPA Action[4] are no longer relevant to this Court's analysis of specific personal jurisdiction due simply to the passage of time and/or because the issues in the UK Action (and by extension, this action) are unrelated to the 2006 WDPA Action.

---

[2] The Court also notes that it would have original jurisdiction over a claim arising under the Lanham Act. 15 U.S.C. § 1121(a).

[3] Accordingly, the Court will not address L & S's arguments respecting this Court's jurisdiction "to apply the Lanham Act extraterritorially in foreign nations 'across the globe' . . . ." Br. in Supp. of Mot. to Dismiss 18, ECF No. 18. L & S may raise this issue in the future should AEO argue that its claim is broader in nature than it has been construed by this Court.

[4] *See Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, No. CIV A 06-607, 2007 WL 1202760 (W.D. Pa. Apr. 12, 2007).

Initially, the Court finds Judge Caiazza's analysis with respect to the formation of the Co-Existence Agreement, and whether the same supported minimum contacts in this forum in the 2006 WDPA Action such that the exercise of specific personal jurisdiction over L & S as to AEO's declaratory judgment claim seeking performance under the Co-Existence Agreement, to be well-reasoned, and that it is further relevant to this Court's consideration of whether specific jurisdiction is warranted where a claim involving a potential breach of the Co-Existence Agreement is at issue. In his Memorandum, Judge Caiazza explained:

> As seen above, the court first must determine whether the Defendants had sufficient contacts with Pennsylvania. The Third Circuit Court has recently summarized the standards applicable to contract disputes, *see* [*Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006)], and its guidance is particularly instructive here:
>
>> In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances. . . . Traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contact. . . . [However], *physical presence in the forum is no longer determinative in light of modern commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum.*
>>
>> Also, *where a long-term relationship has been established, actual territorial presence becomes less determinative.* . . . Finally, [i]n contract cases, *courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach.*
>
> [*Telcordia*], 458 F.3d at 177 (citations and internal quotations omitted, some alterations in original, emphasis added).
>
> In light of these factors, the Plaintiff has made a sufficient showing of minimum contacts regarding L & S and HW. As seen above, these entities made numerous contacts with AE in Pennsylvania regarding the underlying trademark dispute and the parties' attempted resolution of it through an alleged coexistence agreement. *See* discussion *supra* (summarizing corporate Defendants' contacts with Pennsylvania to discuss and/or memorialize substance of parties' dispute(s) and/or settlement on 9/20/05, 10/31/05, 11/2/05, 11/05, 11/23/05, 12/20/05, 1/26/06, 1/31/06, 2/06, 3/3/06, 3/24/06, 5/10/06, and 8/8/06). Taking the Plaintiff's

allegations as true, the coexistence agreement was expected to create the type of "long-term relationship" contemplated in *Telcordia*, and "actual territorial presence" therefore "becomes less determinative." *See id.*; *compare* Pls.' Opp'n Br. at 5 (summarizing terms of purported coexistence agreement, including parties' ongoing "consent to the registration of the other's eagle [trademarks]" and AE's "right of first refusal to purchase LS['s] eagle(s) or business" in future) *with General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001) (parties who "reach out beyond [their] state and create *continuing relationships and obligations* with citizens of another state" render themselves subject to personal jurisdiction) (citation and internal quotations omitted, emphasis added).

Even more telling is the corporate Defendants' use of their contacts to negotiate the alleged coexistence agreement and, thereafter, to unilaterally modify material terms thereof. *See* discussions *supra*; *compare, e.g.*, Mr. Hall's email of 1/31/06 stating that, in light of proposed modification(s), AE "may well think I am moving our position!") with *Telcordia*, 458 F.3d at 177 (courts should inquire whether defendant's contacts with forum "were instrumental in either *the formation of the contract or its breach* ") (emphasis added). In sum, the corporate Defendants' conduct falls squarely within the type contemplated in *Telcordia*, and minimum contacts have been established.

*Am. Eagle Outfitters*, 2007 WL 1202760, at *2–3.

While L & S again attempts to argue that the issues before the High Court in UK Action are limited only to conduct occurring in the UK, both the High Court and this Court have rejected such an assertion. Importantly, the UK Action, the 2006 WDPA Action, and the present action all involve (or involved), at their core, the Co-Existence Agreement and the parties' relationship pursuant to the same. It is clear that L & S's activities within this forum resulted in the formation of the Co-Existence Agreement. The UK Action and the present action each involve interpretation of the Co-Existence Agreement for purposes of determining whether the Agreement prohibits AE, a company headquartered in Pittsburgh, Pennsylvania, from selling AEO Eagle Mark products through third-party websites. Both this action and the UK Action involve AEO's worldwide conduct, including in the state of Pennsylvania, in selling its products through third-party websites, and will require a determination as to whether the same constitutes a breach of the Co-Existence Agreement.

L & S communicated with AE in this forum during the formation of the Co-Existence Agreement, *see* Br. in Opp'n 12, ECF No. 24, and has now communicated with AE in this forum at least nine times from May 13, 2020 to August 28, 2020 to allege the purported breaches of the Co-Existence Agreement presently at issue, to discuss the terms of the Co-Existence Agreement, and to further attempt to resolve the parties' disputes respecting the same prior to the initiation of litigation, *see id.*; Walsh Delc. ¶¶ 5-18, ECF No. 21-1; *see also Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150–51 (3d Cir. 2001) ("Actual presence *during pre-contractual negotiations*, performance, *and resolution of post-contract difficulties is generally factored into the jurisdictional determination*.   In modern commercial business arrangements, however, communication by electronic facilities, rather than physical presence, is the rule.   *Where these types of long-term relationships have been established, actual territorial presence becomes less determinative*." (citations omitted) (emphasis added)).   While a cease and desist letter alone may be insufficient to trigger the exercise of specific personal jurisdiction,[5] the Court notes that the communications at issue herein amount to more than simple cease and desist letters.   These communications, when considered in conjunction with the formation and nature of the Co-Existence Agreement, tend to establish minimum contacts sufficient for purposes of specific personal jurisdiction over L & S as to claims such as those presented herein respecting the parties' relationship and duties, and a breach of the same, under the Co-Existence Agreement.

---

[5] *See Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008) (holding that "the fact that Chevron sent Kehm a cease and desist letter does not rise to the level of purposeful availment for purposes of jurisdiction in Pennsylvania, since the letter expresses the goal not to do business in Pennsylvania[,]" and citing *Red Wing Shoe Co. v. Hockerson– Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.Cir.1998) for its holding that "a 'patentee [does] not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement,' as '[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness.'").

In entering into the Co-Existence Agreement, L & S entered into a perpetual, worldwide contractual relationship with a corporation headquartered in Western Pennsylvania. *See Am. Eagle Outfitters*, 2007 WL 1202760, at *3 ("Taking the Plaintiff's allegations as true, the coexistence agreement was expected to create the type of 'long-term relationship' contemplated in *Telcordia* . . . ."). L & S will be required, in perpetuity, to contact this forum (so long as AE maintains its principal place of business in Pittsburgh, PA) anytime it wishes to discuss the terms of the Co-Existence Agreement, and/or any purported breaches of those terms.[6]  Further, as held by every court to consider the issue, the Co-Existence Agreement is unquestionably controlled by Pennsylvania law.  L & S is afforded the protection of Pennsylvania contract law with respect to the Co-Existence Agreement, and is attempting to enforce the same by way of the UK Action. Where L & S entered into a perpetual agreement governed by Pennsylvania law with a corporation headquartered in Western Pennsylvania, L & S cannot convincingly argue that it could not reasonably expect to be haled into this District where purported breaches of the Co-Existence Agreement are at issue.  L & S has contacted AE in this forum on numerous occasions to discuss the formation of the Co-Existence Agreement, the terms of the Co-Existence Agreement, and alleged breaches of those terms, and further to attempt to resolve disputes arising out of the Co-Existence Agreement.  The Court finds that this action clearly arises out of the contacts at issue. Accordingly, the Court further finds that, in this case, just as in the 2006 WDPA Action, L & S's "conduct falls squarely within the type contemplated in *Telcordia*, and minimum contacts have been established." *Am. Eagle Outfitters*, 2007 WL 1202760, at *3.

---

[6] The Court notes that the letter (addressed to AE's CFO in Pittsburgh) attached as Exhibit B to the Walsh Declaration (ECF No. 21-1) references intermittent communications over the preceding 15-month period between AE and L & S with respect to a different matter concerning the Co-Existence Agreement.

With respect to whether the Court's exercise of specific personal jurisdiction otherwise comports with fair play and substantial justice, the Court notes that L & S does not advance argument respecting the same in its briefing wherein it specifically addresses personal jurisdiction. "Once the plaintiff has made out a prima facie case of minimum contacts, . . . the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Am. Eagle Outfitters*, 2007 WL 1202760, at *5 (quoting *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)).  L & S bears a "heavy" burden in attempting to show the unreasonableness of an exercise of jurisdiction.  *Id*.  Courts consider: "(a) the burden on the defendant; (b) the forum State's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining the most efficient resolution of controversies; and (d) the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

Any argument advanced by L & S as to this issue is (arguably) set forth in support of L & S's assertion that this forum is not the proper venue for resolution of the claims at issue.  The Court is not inclined to find, where L & S failed to address the issue directly, that L & S has presented a compelling case that the Court's exercise of jurisdiction would be unreasonable in this matter.  In any event, as was the case in the 2006 WDPA Action, "[t]here is no evidence in the record to suggest that litigating here will place an undue burden on the [L & S]."  *Am. Eagle Outfitters*, 2007 WL 1202760, at *5.  Further, both AEO and the Commonwealth of Pennsylvania share an interest in the enforcement of contracts entered into between a foreign corporation and a Pennsylvania resident.  *Id*.  "Factor (d) similarly is a 'wash,' as the laws of both Pennsylvania and the U.K. contemplate parties' adherence with their agreed-upon business arrangements."  *Id*.  The Court will address L & S's contentions respecting venue and comity below, but finds that L & S has

20

otherwise failed to carry its heavy burden of establishing that, despite the Court having found sufficient minimum contacts to warrant the exercise of specific personal jurisdiction in this matter, some other consideration renders jurisdiction unreasonable.

For the reasons discussed above, the Court finds that L & S has sufficient minimum contacts with this forum to warrant the exercise of specific personal jurisdiction over L &S  in this matter as to AEO's claims, and that the exercise of jurisdiction comports with fair play and substantial justice.  The Court rejects L & S's arguments to the contrary.  Because the Court has determined that it has subject matter jurisdiction over AEO's claims and specific personal jurisdiction over L & S, the Court must consider L & S's arguments respecting international comity and forum non conveniens.

### 3.   International Comity and Fed. R. Civ. P. 12(b)(3)

L & S next argues that, under the principle of international comity, the High Court is the appropriate forum for resolution of the issues raised by way of both the UK Action and the present action, which L & S asserts are parallel and duplicative.  Br. in Supp. of Mot. to Dismiss 6, ECF No. 18.  L & S asserts that all currently existing issues and controversies between the parties have been raised before, and will be resolved by, the High Court in the UK Action.  Br. in Supp. of Mot. to Dismiss 6, ECF No. 18.  Specifically, by way of the UK Action, L & S asserts that AEO's conduct in selling products bearing the AEO Eagle Design through UK-facing third-party websites constitutes passing off under UK law and a breach of the Co-Existence Agreement's provision limiting AEO sales to "AE stores, stores within stores[,] or AE website."  *Id*.  L & S also asserts that the High Court's holdings "that the whole of the claims have to be decided in one forum or other" and "that the declaration being sought by L & S in the proceedings could potentially have consequences for both parties throughout the world" tend to establish that all issues raised by AEO

in this lawsuit will be resolved by way of the UK Action.  Reply to Surreply 5-6, ECF No. 30.  L & S asserts that the UK Action was filed first, that it involves conduct and injury that occurred exclusively in the UK, and that it further involves interpretation of the UK law of passing off.  Br. in Supp. of Mot. to Dismiss 6, ECF No. 18.  L & S argues that the High Court is, accordingly, the most appropriate forum for resolution of the claims at issue in this case.

"Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n. 27 (1987).  "A federal court may, in its discretion, dismiss a case based on comity."  *Int'l Bus. Software Sols., Inc. v. Sail Labs Tech., AG*, 440 F. Supp. 2d 357, 364 (D.N.J. 2006).  The United States Court of Appeals for the Third Circuit has explained:

> Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another.  It is not a rule of law, but one of practice, convenience, and expediency.  Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation.  Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws.  Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).  In considering whether to dismiss an action on the basis of comity, a court must initially determine whether the foreign proceeding is "duplicative or parallel to the domestic proceeding."  *Int'l Bus.*, 440 F. Supp. 2d at 364 (citing *Hay Acquisition Co. v. Schneider*, 2005 WL 1017804, *11 (E.D.Pa. April 27, 2005)).  "'Parallel' or 'duplicative' means there is a 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.'"  *Id.* (quoting *Lexington Ins. Co. v. Forrest*, 263 F.Supp.2d 986, 1003 (E.D. Pa. 2003)).

If the court finds that the foreign action is duplicative or parallel, the court must then determine whether there are "extraordinary circumstances" warranting dismissal, including:

> (1) the desirability of avoiding duplicative litigation, (2) the inconvenience of the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the domestic claim.

*Int'l Bus.*, 440 F. Supp. 2d at 364 (quoting *Hay Acquisition Co.*, 2005 WL 1017804, at *12); *see also Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1340 (N.D. Ill. 1996), *aff'd*, 132 F.3d 36 (7th Cir. 1997) ("Moreover, where 'the foreign action is pending rather than decided, comity counsels that priority generally goes to the suit filed first.'" (quoting *Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 318 (S.D.N.Y.1986))); *id.* at 1340–41 ("Because Fitzroy filed the NZ action before Basic filed the Complaint, the New Zealand court should have the opportunity to render a judgment, or make other decisions regarding its own jurisdictional and pleading rules, without an American federal court 'looking over its proverbial shoulder,' second-guessing each New Zealand court decision, and predicting possible foreign court judgments.").  If the defendant meets its burden of establishing a parallel or duplicative foreign proceeding and that extraordinary circumstances warrant dismissal, a federal court is within its discretion to dismiss the civil action pending before the court.

L & S also relies on the "first-filed rule" applicable in the Third Circuit, and seemingly argues that comity and the first-filed rule, when considered in conjunction, warrant dismissal of the instant matter.  "Under the 'first-filed' rule applied in the Third Circuit in cases of concurrent federal jurisdiction, the court which first has possession of the subject must decide it."  *Colony Nat. Ins., Co. v. UHS Child. Servs., Inc.*, No. CIV.A. 09-2916, 2009 WL 3007334, at *2 (E.D. Pa. Sept. 11, 2009) (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  The United States Court of Appeals for the

Third Circuit has explained, however, that the first-filed rule "has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty." *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981*), aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) (citing *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  The Third Circuit further explained that such a situation involves questions of comity.  *Id*.  Accordingly, the Court shall constrain its consideration to the doctrine of comity.

In the UK Action, L & S asserts that AE breached the Co-Existence Agreement by selling AEO Eagle Design-branded products through third-party websites, including ASOS.com and ZALANDO.com, and that, in doing so, AE also passed off its goods as those of L & S in violation of UK law.  Compl. ¶ 19, ECF No. 1.  The Court generally agrees, particularly in light of the High Court's holding that the breach of contract claim in the UK Action could have consequences for both parties throughout the world, that L & S's breach of contract claim in the UK Action and AEO's claim for declaratory judgment as to whether its sale of products bearing its AEO Eagle Design through third-party websites breaches the Co-Existence Agreement are likely sufficiently parallel or duplicative.  The Court cannot find the same, however, with respect to AEO's claim seeking a judgment declaring that such conduct does not violate the Lanham Act and/or Pennsylvania law.  *See V & S Vin & Sprit Aktiebolag v. Hanson*, 146 F. Supp. 2d 796, 802 (E.D. Va. 2001) ("Clearly, Plaintiff can only obtain relief under the specific statutes at issue—the Lanham Act and the ACPA—in a U.S. court.")  "'Parallel' or 'duplicative' means there is a 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.'"  *Int'l Bus.*, 440 F. Supp. 2d at 364 (quoting *Lexington Ins.*, 263 F.Supp.2d at 1003).  Because this case involves at least one claim that is not at issue before the High Court in the UK

Action, and because that claim will survive the Motion to Dismiss, the Court is constrained to find that the UK Action and the present matter are not sufficiently parallel or duplicative and that dismissal under the doctrine of comity is not warranted at this juncture.  Because the Court finds that the UK Action and the instant action are not, at this time, sufficiently parallel or duplicative, the Court need not consider whether "extraordinary circumstances" warrant dismissal.

With respect to L & S's assertion that the Court should dismiss this matter under the doctrine of forum non conveniens because the High Court is a superior alternative forum, the Court initially summarily rejects, consistent with this Court's discussion above, that this forum is inappropriate because AEO has attempted to "fabricate a basis to place venue in this declaratory judgment action in this District by contending that the parties have a ripe dispute that does not yet exist, and the issues raised to date concern only violations occurring 'in the UK.'"  Br. in Supp. of Mot. to Dismiss 9, ECF No. 18.  The dispute between AEO and L & S, like the Co-Existence Agreement, is worldwide in nature, and AEO's sale of its products across the world, and not just in the UK, is at issue.

Further, "[f]or all venue purposes . . . a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."  28 U.S.C. § 1391(c)(3).  Accordingly, this Court is an appropriate venue for resolution of AEO's claims.  Where a defendant relies on the doctrine of forum non conveniens in seeking dismissal, "[i]t is settled that the defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis."  *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988).  The defendant must first establish the existence of an adequate alternative forum, and this requirement is generally satisfied if the defendant is "amenable to process" in the alternative forum.  *Lacey v. Cessna*

*Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991).  An alternative forum may be inadequate, however, if it offers an unsatisfactory remedy, such as where "the subject matter of the suit is not cognizable in the alternative forum."  *Lacey*, 932 F.2d at 180.

If the defendant establishes the existence of an adequate alternative forum, the defendant must then establish that certain private and public interest factors weigh heavily in favor of dismissal.  *Id*.  The private interest factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

*Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  A plaintiff's choice of forum is typically entitled to substantial deference, and "should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant."  *Lacey*, 862 F.2d at 43.

L & S bears the burden of persuasion as to the forum non conveniens analysis, and the Court agrees with AEO that L & S fails to sufficiently establish either of the two requirements for dismissal.  Initially, L & S has not sufficiently established that the High Court is an adequate forum for resolution of AEO's declaratory judgment claim respecting whether its conduct violates the Lanham Act.  *V & S*, 146 F. Supp. 2d at 802 ("Clearly, Plaintiff can only obtain relief under the specific statutes at issue—the Lanham Act and the ACPA—in a U.S. court.").  Even if it had, the

Court would find that L & S has not met its burden with respect to the public and private interest factors.

With respect to the private interest factors, L & S again relies primarily on an assertion that the UK Action involves only sales that have taken place in the UK, and essentially argues that the vast majority of the relevant evidence to that action is located in the UK. Again, AEO's worldwide sale of its products through third-party websites is at issue in both this action and the UK Action. Further, interpretation of the Co-Existence Agreement under Pennsylvania law will be essential in either forum, with the potential for the necessity of evidence and/or testimony from the individuals involved in the negotiation leading up to the formation of the Co-Existence Agreement. L & S is located in the UK and asserts that its witnesses and evidence are as well, and AEO asserts that its witnesses are in Pennsylvania. The Court finds that L & S's arguments in support of the private interest factors are mostly perfunctory, and that there is nothing in the record to establish the extent of the burden that would be imposed upon L & S by litigation in this forum. The Court finds the private interest factors to be neutral, and further finds that the same thus do not support dismissal of the present action.

Turning to the public interest factors, L & S relies on the "local interest in having localized controversies decided at home" and the "avoidance of unnecessary problems in conflict of laws, or in application of foreign laws" factors in arguing that the instant matter should be dismissed. If AEO had attempted to assert a claim for declaratory relief seeking a holding as to whether its conduct constituted passing off under UK law, the Court would agree that these factors would support dismissal. The Court notes, however, that AEO has not asserted a claim for declaratory relief before this Court seeking a determination that its actions do not violate UK law, but rather seeks declaratory judgment that its conduct in selling its products through third-party websites in

the United States does not violate the Lanham Act and/or Pennsylvania law.  *See V & S*, 146 F. Supp. 2d at 802 ("On the other hand, the Complaint includes only U.S. legal bases, i.e., the Lanham Act, the ACPA and the common law of Virginia, and as noted above, Plaintiff has apparently abandoned its efforts to obtain a global injunction.  Thus, the public factor concerned with interpretation of foreign law leans toward retaining the matter in this Court, which is well-acquainted with the laws at issue, rather than deferring the matter to an Australian court.  This is particularly relevant because trademark rights are territorial and exist according to the terms of each country's laws.").[7]  Pennsylvania law controls with respect to AEO's claim for declaratory relief under the Co-Existence Agreement,[8] and federal law and Pennsylvania law control the claim for declaratory relief respecting the Lanham Act and applicable state law.  The Court finds the public interest factors are either neutral or weigh against dismissal at this juncture.  Accordingly, L & S has not met its burden of showing that the private and public interest factors weigh heavily in favor of dismissal.

AEO's choice of forum is entitled to substantial deference.  L & S failed to carry its burden of sufficiently establishing that that the relevant private and public interest factors weigh heavily in favor of dismissal.  For these reasons, the Court rejects L & S's assertion that this matter should be dismissed under the doctrine of forum non conveniens.

In light of the Court's findings above, and particularly with respect to the fact that the UK Action and the present action are not sufficiently parallel or duplicative, the Court is not inclined, at this juncture, to grant the stay requested by L & S as alternative relief.  *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 157 (3d Cir. 2001) ("The District Court acknowledged that its injunctive

---

[7] *See also* Reply in Supp. of Mot. to Dismiss 12, ECF No. 23 (L & S arguing that, "[b]y definition, trademark laws throughout the world are territorial in nature and apply only within the borders of each nation.").
[8] As well as AEO's proposed claim for breach of the Co-Existence Agreement in the proposed amended complaint.

power must be exercised sparingly; parallel proceedings are ordinarily permitted to proceed simultaneously, at least until one has reached the stage where its ruling becomes *res judicata*."). The Court notes that, should any future ruling in this case warrant reconsideration of the issues of international comity or forum non conveniens, the Court will entertain motions respecting the same at the appropriate juncture.

### B.  Motion to Amend

By way of the Motion to Amend, AEO seeks to file an amended complaint that adds a breach of contract claim, corrects a factual allegation in the original complaint, and sets forth an additional factual allegation to purportedly amplify its existing declaratory judgment claims.  As noted above, the proposed amended complaint seeks to add a claim for breach of contract, specifically asserting that L & S, following the filing of the instant action, has breached the Co-Existence Agreement by filing trademark opposition proceedings against AEO's European Union Trademark Application and UK Trademark Application in order to prevent the registration of what AEO refers to as the "AEO Eagle 2 Design."  *See* Mot. to Amend ¶¶ 5-9, ECF No. 31.

L & S objects to the proposed amendments at issue only on the basis of futility of amendment.  L & S first argues that the proposed amendments are futile because the additional claim, the proposed correction, and the additional factual allegation cannot save the present action from dismissal for the reasons set forth in its Motion to Dismiss and discussed at length above. *See* Br. in Opp'n to Mot. to Amend 1-2, ECF No. 32.  As the Court has determined that L & S fails to sufficiently set forth a basis for dismissal under Rules 12(b)(1), 12(b)(2), or 12(b)(3) at this time, the Court summarily rejects any assertion that the Motion to Dismiss serves as a basis for denial of the Motion to Amend.  As this is the only basis asserted by L & S in support of denial of AEO's requested amendments setting forth an additional factual allegation in support of its

declaratory judgment claims and to further correct a factual allegation, the Court will permit AEO to file an amended complaint containing such amendments.

L & S also argues that AEO's proposed breach of contract claim is futile because the claim fails to set forth a breach of the Co-Existence Agreement.  Specifically, L & S argues that the Co-Existence Agreement addressed only the original eagle design reflected in the AEO Eagle Design and used at that time, and that it did not speak to future eagle designs such as the "AEO Eagle 2 Design."  Br. in Opp'n 4, ECF No. 32.  "Because a futility challenge attacks an amendment's legal sufficiency, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6)."  *McLaughlin*, 2018 WL 623499 at *3 (citing *Jablonski*, 863 F.2d at 292).  A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *GNC Franchising LLC v. Khan*, No.

30

CIV.A. 05-1341, 2008 WL 612749, at *5 (W.D. Pa. Mar. 3, 2008) (quoting *Inoff v. Craftex Mills, Inc.*, Civil Action No. 06-3675, 2007 WL 4355385, at *8 (E.D.Pa. Dec.11, 2007)).  As noted above, L & S challenges only AEO's purported failure to allege a breach of the Co-Existence Agreement at this time.  The provision at issue provides: "Each party shall consent to the registration of the other's eagle . . . ."  Compl. Ex. B at 1, ECF No. 1-2.  L & S argues that "the parties could not have had a meeting of the minds, and [L & S] could not have consented to registration, concerning a trademark that was over a decade away from even existing."  Br. in Opp'n 4, ECF No. 32.  In response, AEO argues that "[u]nlike another term in the Co-Existence Agreement which was narrowly drafted to contain the wording 'current eagle,' the term that gives rise to AEO's breach of contract claim does not contain the word 'current' and thereby includes the eagle design recently opposed by L & S[,]" and further argues that, accordingly, L & S breached the Co-Existence Agreement by filing trademark opposition proceedings.  Reply in Supp. of Mot. to Amend 5, ECF No. 34.

The Co-Existence Agreement is perpetual in nature and worldwide in scope, and clearly imposes duties on the parties moving forward.  While the Court makes no finding as to which party's interpretation of the relevant provision is correct at this time, the Court does find that the issue cannot be properly resolved where each party has advanced only a single paragraph addressing the same.  L & S's argument relies on an assertion respecting the parties' intent at the time that they entered into the Co-Existence Agreement, and AEO has pointed to a provision that references the term "current eagle" in arguing that the provision at issue herein, which does not refer to the parties' "current eagle," is not limited to only the parties' then-existing eagle designs.  Again, the Court finds that this issue is simply underdeveloped at this juncture, and thus finds that L & S has not sufficiently established futility such that the liberal standard for amendment under

Rule 15(a) has been overcome.  While the Court will grant AEO's Motion to Amend and permit AEO to file the proposed amended complaint, it does so without prejudice to this argument being raised at a later date, if and when appropriate and warranted.

The Court notes that L & S also generally argues that the Court should not permit amendment because this Court lacks jurisdiction over a breach of contract claim involving trademark opposition proceedings pending in the UK and European Union.  *See* Br. in Opp'n to Motion to Amend 4-5, ECF No. 32.  Even assuming that the same may be asserted as a basis for denial of a motion to amend, *see* Reply in Supp. of Mot. to Amend 4-5; 6, ECF No. 34, the Court would find that L & S's argument is unavailing at this time.  The Court again notes that the Co-Existence Agreement is governed by Pennsylvania law.  L & S advances no argument that AEO's proposed breach of contract claim is not ripe, and, in light of the Court's holdings above, the Court clearly has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the breach of contract claim, and would otherwise have subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Further, for the same reasons discussed above, the Court has personal jurisdiction over L & S in this matter.  Finally, as addressed at length with respect to L & S's Motion to Dismiss, this Court is an appropriate venue for resolution of the proposed breach of contract claim.  For these reasons, the Court will grant AEO's Motion to Amend.

## IV.    Conclusion

For the reasons discussed above, the Court will deny L & S's Motion to Dismiss, and will grant AEO's Motion to Amend.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 21, 2021
cc: All counsel of record

32